# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:17-CR-192** |
| v.  : | **(Chief Judge Conner)** |
| **LOUIS F. PETROSSI,** : | |
| **Defendant** : | |

## MEMORANDUM

Defendant Louis F. Petrossi, through appointed counsel, moves for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 124). Petrossi asks the court to waive the statute's administrative exhaustion requirements and immediately reduce his sentence to time served in light of concerns regarding transmission of the COVID-19 virus in an institutional setting. The government opposes both requests. For the reasons that follow, we will deny Petrossi's request to waive the exhaustion requirement and will hold his motion in abeyance until the statutory exhaustion period closes on April 27, 2020.

## I. Factual Background & Procedural History

A federal grand jury returned an indictment in this court on June 21, 2017, charging Petrossi with securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 3147(1) (Count 1); investment adviser fraud in violation of 15 U.S.C. §§ 80b-6 and 80b-17 and 18 U.S.C. § 3147(1) (Count 2); and wire fraud in violation of 18 U.S.C. §§ 1343 and 3147(1) (Count 3). (See Doc. 1). The charges stemmed from Petrossi's ownership and operation of two investment funds, Chadwicke Partners LLC and Chadwicke Ventures LLC (together, "Chadwicke").

(See generally id.) The indictment alleged that, from January 2015 to January 2017, Petrossi engaged in a scheme to defraud investors and potential investors by falsely representing that their money would be used to invest in privately held startup companies when Petrossi instead used the money for personal expenses. (See id. ¶ 7). The indictment further alleged that Petrossi disseminated fraudulent statements to investors that overstated both the cost and the value of securities held by Chadwicke. (See id.)

Each count of the indictment included an allegation that Petrossi committed the offense while released under Title 18 for other criminal charges—specifically, charges then pending before Judge Brian M. Cogan in the Eastern District of New York for conspiracy to commit securities fraud and other financial crimes related to a fraudulent scheme involving ForceField Energy, Inc. ("ForceField"). (Id. at 10, 12, 13; see id. ¶¶ 13-14). According to the indictment in the instant case, the pretrial release agreement in the ForceField case barred Petrossi from any employment directly involving investors. (See id. ¶ 14). On May 2, 2017, a jury found Petrossi guilty on all counts in the ForceField case. See United States v. Petrossi, No. 1:16-CR-234, Doc. 256 (E.D.N.Y. May 2, 2017).

Petrossi proceeded to trial in this case on March 5, 2018. After four days of evidence, the jury found Petrossi guilty on all three counts. (Doc. 64 at 1). The jury also found that Petrossi had committed each of the three offenses in this case while on pretrial release in the ForceField case, triggering a statutory sentencing enhancement under 18 U.S.C. § 3147(1). (See id. at 2).

Petrossi was sentenced on the ForceField charges on May 24, 2018. Before imposing sentence, Judge Cogan observed that he found Petrossi's health to be a "major mitigating factor" and that he did not wish to have Petrossi "spend his final years in jail," but also noted that Petrossi's repeat conduct was indicative of a "very fundamental character flaw" and an inherent tendency toward fraud and financially injurious conduct. Petrossi, No. 1:16-CR-234, Doc. 412, Sent. Tr. 30:1-16, 31:17-32:5, 33:2-11 (E.D.N.Y. May 25, 2018). Judge Cogan described then-77-year-old Petrossi's health problems as consisting of leukemia, pneumonia, pleural effusions, and a potentially cancerous lung nodule. Id. at 6:12-23. After balancing the Section 3553(a) factors, Judge Cogan sentenced Petrossi to 44 months' imprisonment to run concurrently across all counts, id., Doc. 407 at 3 (E.D.N.Y. May 25, 2018), a variance from the Guidelines range of 121 to 151 months' imprisonment, see id., Doc. 412, Sent. Tr. 5:9-17. Judge Cogan further imposed a three-year term of supervised release and entered an $8 million restitution order. Id., Doc. 407 at 5, 8.

We proceeded to sentencing in this case on October 29, 2018. After resolving several defense objections and establishing a total loss amount of $5,432,453.08—$1,170,940 attributable to the Chadwicke scheme and $4,261,513.08 attributable to relevant conduct in the ForceField scheme—we arrived at an offense level of 34, a criminal history category of I, and a Guidelines imprisonment range of 151 to 188 months. (Doc. 119, Sent. Tr. 8:6-9:9, 29:14-22). The court balanced the nature of Petrossi's fraud, and the aggravating factor that it occurred while under supervision in the ForceField case, with Petrossi's age and health problems, which the court concluded the Bureau of Prisons was adequately equipped to treat. (Id. at

3

75:10-76:19). After considering all of the Section 3553(a) factors, the court varied downward to a sentence of 100 months and three days' imprisonment. (Doc. 111 at 3). This sentence consists of 100 months on each of Counts 1 and 3, and 60 months on Count 2, to be served concurrently with one another and with the 44-month term imposed in the ForceField case, as well as a sentence of one day on each count, to run consecutively, pursuant to 18 U.S.C. § 3147(1). (Id.) The sentence also includes a three-year term of supervised release, run concurrent with the ForceField term, and a $2,265,735.84 restitution order. (Id. at 4, 7).

Petrossi appealed to the Third Circuit Court of Appeals, which affirmed his convictions and sentence. See United States v. Petrossi, 796 F. App'x 770 (3d Cir. 2019) (nonprecedential). Petrossi is currently housed at the Satellite Camp at the Federal Correctional Institution in Terre Haute, Indiana ("FCI-Terre Haute"), with a projected release date of February 24, 2026. (Doc. 124 ¶¶ 1-2).

On March 24, 2020, we received a motion from Petrossi's family members asking the court to immediately release Petrossi to home confinement given his age and health condition and his family's fear that the COVID-19 virus might reach FCI-Terre Haute. (See Doc. 122). Recognizing that only the BOP has authority to release a prisoner to home confinement, see 18 U.S.C. § 3624(c)(2), we construed the motion as a request for sentence reduction and compassionate release under 18 U.S.C. § 3582(c)(1)(A) and appointed the Federal Public Defender to determine whether Petrossi may be eligible for such relief and, if so, to file an appropriate supplemental motion on his behalf. (Doc. 123). Three days later, as required under Section 3582(c)(1)(A), Petrossi asked the warden to seek compassionate release on

4

his behalf. (Doc. 124 ¶ 6; see Doc. 124-1). The warden replied that the request had been forwarded to the Reduction in Sentence Coordinator and that a response would be provided within 30 days. (Doc. 124 ¶ 7; see Doc. 124-2).

On April 9, 2020, appointed counsel filed the instant supplemental motion for sentence reduction and compassionate release, together with a supporting brief and exhibits. (Docs. 124, 125). According to counsel, Petrossi, now 79, has suffered deterioration of his health while incarcerated. (Doc. 125 at 4). Counsel reports that Petrossi "has had fluid removed from his lungs," "been diagnosed with a leaking aortic valve," and "undergone surgeries of his right kidney and for skin cancer," placing him in the class of people considered to be at "high risk" of experiencing serious complications if they contract the COVID-19 virus. (Id. at 1 n.1, 4 (citing CENTERS FOR DISEASE CONTROL AND PREVENTION, GROUPS AT HIGHER RISK FOR SEVERE ILLNESS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last reviewed Apr. 14, 2020))).

Upon receipt of Petrossi's supplemental motion, we ordered the government to file an expedited response by noon today. (See Doc. 126). We have received the government's opposition brief, (Doc. 127), and Petrossi's motion is ripe for review.

## II. Discussion

Petrossi asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent

5

with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Before the First Step Act's passage, only the Director of the BOP could move the court for compassionate release of a defendant. See 18 U.S.C. § 3582(c)(1)(A)(i) (2002) (amended 2018). Now, a defendant may move the court directly under Section 3582(c)(1)(A), subject to certain statutory prerequisites: the defendant must either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) await the "lapse of 30 days from the receipt of such a request by the warden." 18 U.S.C. § 3582(c)(1)(A) (2018). This language reveals a congressional preference that the BOP (presumably having the best picture of, *inter alia*, a defendant's circumstances and its own ability to treat him) be given the first opportunity to consider whether a reduced sentence is warranted. See id.; United States v. Epstein, No. 14-287, 2020 WL 1808616, at *3 (D.N.J. Apr. 9, 2020) (quoting United States v. Gross, No. 15-769, 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020)).

Petrossi acknowledges the statutory exhaustion requirements, and he acknowledges that 30 days have not yet expired since his March 28, 2020 request that the BOP move for compassionate release on his behalf. (See Doc. 7 ¶¶ 6-7, 32; Doc. 125 at 11-12). He nonetheless asserts that the court can and should "waive the timing and decide Mr. Petrossi's motion now due to the urgency of the COVID-19 pandemic." (Doc. 125 at 10). The government, in addition to disputing whether a reduction is warranted, contends that statutory exhaustion rules like the one in Section 3582(c)(1)(A) are not subject to equitable exceptions. (Doc. 127 at 9-13).

Whether an exhaustion requirement can be excused depends on where it originates. As the Supreme Court explained in <u>Booth v. Churner</u>, 532 U.S. 731 (2001), we should "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." <u>Booth</u>, 532 U.S. at 741 n.6. More recently, in <u>Ross v. Blake</u>, 578 U.S. ___, 136 S. Ct. 1850 (2016), the Supreme Court elaborated: "No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." <u>Ross</u>, 136 S. Ct. at 1857 (internal citations and quotations omitted); <u>see</u> <u>also</u> <u>id.</u> (quoting <u>Booth</u>, 532 U.S. at 741 n.6).

Petrossi intimates that <u>Ross</u> supports rather than undermines his position. He observes (correctly) that the Supreme Court in <u>Ross</u> held that exhaustion can be excused under the Prison Litigation Reform Act ("PLRA")—notwithstanding the PLRA's explicit exhaustion mandate—when administrative remedies are not "available" to the prisoner. (<u>See</u> Doc. 125 at 10-11 (citing <u>Ross</u>, 136 S. Ct. at 1856-58)). But the argument that this holding authorizes judges to create exceptions to statutory exhaustion requirements from scratch misapprehends <u>Ross</u>. The Court did not "create an exception" to the PLRA's exhaustion requirement. (Doc. 125 at 10). It interpreted the PLRA's "built in" exception, *viz.*, that prisoners must first exhaust "such administrative remedies *as are available*" before commencing suit. <u>Ross</u>, 136 S. Ct. at 1854-55 (quoting 42 U.S.C. § 1997e(a)) (emphasis added). The argument that we have authority to create an exhaustion exception that finds no

7

footing in the compassionate release statute is squarely foreclosed by Supreme Court precedent.[1]

Petrossi notes that a handful of district courts have nonetheless waived the 30-day waiting period due to the current pandemic, and he entreats us to follow suit. (See Doc. 125 at 11-12 (citing United States v. Zukerman, No. 16-CR-194, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); United States v. Colvin, No. 3:19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020))). We decline the invitation. Both Zukerman and Colvin rest on the Second Circuit's statement in Washington v. Barr, 925 F.3d 109 (2d Cir. 2019), that "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." Washington, 925 F.3d at 118; see Zukerman, 2020 WL 1659880, at *3; Colvin, 2020 WL 1613943, at *2. Because Washington dealt with a *judicial* exhaustion requirement that, consistent with Ross and Booth, was amenable to judicial exception, its broad statement about excusing even *statutory* exhaustion requirements is merely *dicta*. See Washington,

---

[1] We are similarly unpersuaded by Petrossi's reliance on cases recognizing equitable exceptions to procedural default in the habeas context. (Doc. 125 at 11 (citing, *inter alia*, McQuiggins v. Perkins, 569 U.S. 383, 393 (2013), for proposition that a "miscarriage of justice" exception applies to procedural default of Section 2254 petitions)). Although related, statutory exhaustion and procedural default are materially distinct.

925 F.3d at 115; see also Epstein, 2020 WL 1808616, at *4 n.4.[2]  Other district courts in the Second Circuit have aptly acknowledged this distinction in concluding that Section 3582(c)(1)(A)'s statutory exhaustion requirement cannot be judicially excused.  See, e.g., United States v. Woodson, No. 18-CR-845, 2020 WL 1673253, at *3-4 (S.D.N.Y. Apr. 6, 2020); see also Gross, 2020 WL 1673244, at *3 (quoting Ross, 136 S. Ct. at 1857; Booth, 532 U.S. at 741 n.6).

Finally, although the Third Circuit Court of Appeals has not been asked directly whether the exhaustion requirement in the compassionate release statute can be judicially excused, it has left little doubt as to how it would resolve that issue.  Less than two weeks ago, in United State v. Raia, ___ F.3d ___, 2020 WL 1647922 (3d Cir. Apr. 2, 2020), the court declined to remand to the district court a compassionate release motion filed with the court of appeals, finding that remand would be futile given the defendant's failure to exhaust.  Raia, 2020 WL 1647922, at *2.  The court said that failure to comply with the exhaustion requirement presented a "glaring roadblock" to relief under Section 3582(c)(1)(A).  Id.  The court added: "Given BOP's shared desire for a safe and healthy prison environment, we conclude that *strict compliance* with § 3582(c)(1)(A)'s exhaustion requirement takes on added— and critical—importance."  Id. (emphasis added).  At least one district court in this

---

[2] Notably, the Supreme Court decision cited by Washington for this proposition also involved a judicially created exhaustion rule.  See McCarthy v. Madigan, 503 U.S. 140, 143-44 (1992) ("[W]here Congress specifically mandates, exhaustion is required.  But where Congress has not clearly required exhaustion, sound judicial discretion governs.").  The broad reading of Washington adopted by some Second Circuit district courts, see Zukerman, 2020 WL 1659880, at *3; Colvin, 2020 WL 1613943, at *2, is directly at odds with the Supreme Court's decisions in Ross and Booth.

circuit has since interpreted Raia to bar a judge-created exception to the statute's exhaustion requirement, see Epstein, 2020 WL 1808616, at *3 (quoting Raia, 2020 WL 1647922, at *2), and we agree that there can be no other reading of the Raia decision.

For these reasons, we decline Petrossi's request to entertain his unexhausted motion for compassionate release. The procedural requirements of Section 3582(c)(1)(A) are clear, and we cannot reduce a defendant's sentence for "extraordinary and compelling reasons" until he complies with those requirements. See 18 U.S.C. § 3582(c)(1)(A)(i); Raia, 2020 WL 1647922, at *2. Because Petrossi has not yet exhausted his compassionate release request with the BOP, we will hold his motion in abeyance until April 27, 2020, when the 30-day statutory exhaustion window will close. We encourage the BOP to respond to Petrossi's request before that time, and we task appointed counsel to apprise us of any material changes in the law or Petrossi's circumstances in the interim.

## III.  Conclusion

Petrossi's motion (Doc. 124) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i) shall be held in abeyance until April 27, 2020. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    April 14, 2020